Good morning, Illinois Appellate Court, 1st District Court is now in session. The 3rd Division, the Honorable Justice Mary Kay Rochford presiding, case number 24-0582, Peeble v. Laron Williams. Good morning, everyone. I'm Mary Kay Rochford with Justice Jesse Reyes. Justice Bertina Lampkin, who is assigned to the case as well, unfortunately had unforeseen circumstances and will not be able to be here at the oral argument, but she will listen to the recording at a later time. So if the attorneys, before we begin, would introduce themselves, beginning with the attorney for the appellate. Good morning, Your Honors. Jonathan Easting of the Office of the State Appellate Defender on behalf of the appellant, Mr. Laron Williams. Good morning. Good morning, Your Honors. I am Heather Farnbrook here on behalf of the people of the state of Illinois. Wonderful. Each side will have 15 minutes to present their case. Mr. Easting, how long would you like to reserve for your rebuttal? I'd like to hold about 2 minutes back for rebuttal, please. Okay, 2 minutes. Wonderful. And when you're ready, you may begin. May it please the Court. From the moment that Laron Williams, seated in the back of the red line, heard that somebody was stabbing people on the train, up until when Daniel Beam charges at Mr. Williams' chest, knife first, and he learns who that stabber was, every fact in that interim reinforced Mr. Williams' belief over and over that he had a reasonable belief that he needed to act to defend others and ultimately to defend himself. Now, Your Honors, I believe that this is a sufficiency of the evidence case. Given what the video plainly shows, given that my client acted to stop what he believed was a stabbing spree in process, this Court should find the State fail to prove its case beyond a reasonable doubt and reverse outright. Now, there's other issues in the case, and we certainly believe at the least, given the State's concession on Issue 3, that clear error has occurred in polling of the jury, the case is at the least closely balanced, and this Court should reverse for a new trial. But this Court should find the evidence insufficient to convict. Yes, Your Honor? I have a question. So you said, sorry about that. I don't know if you could hear that or not. That's on our end. Doesn't the fact that the jury acquitted Holman but convicted the defendant suggest that the jury was closely examining the evidence and making a knowing decision as to each defendant? Your Honor, I do think this was a conscientious jury that was out for a long time, and they offered a number of decisions. Now, what comes up, and this comes up in Issue 2 of the brief, is the jury had some specific questions, and there's reason to think that the Court's incorrect answer to those questions essentially led the jury to incorrectly convict Mr. Williams and acquit Mr. Holman on similar facts. In fact, it's the similarity of the facts that is one reason why a decision to find Mr. Williams guilty is an unreasonable decision by the jury in this case. Because where the issue is whether my client had a reasonable belief he needed to defend others and ultimately himself, the fact that Vernon Holman on that train seeing similar things also came to the same belief that he needed to defend passengers on that train from Daniel Behan's stabbing spree would indicate that my client's belief is reasonable and not just some flight of fancy. Indeed, there's reason to think that my client's belief is more reasonable because he's on that journey on the train to help. First, he sees Martinez Owens, who's been stabbed in the back. The stabbing occurs in Defense Exhibit 5 after Owens' friend fails to take Beam's phone from him. They're fleeing down the aisle. Beam rushes down that aisle, stabs Mr. Owens above the kidney, and a few moments after that, my client's walking through that car and sees Owens as his stab wound is being tended to by a passenger on the train. Then he ends up seeing Vernon Holman, who is holding his neck as his. Yes, you're right. I don't want to draw, but we'll get back to the tape. But my question was regards to the instructions. Now, you indicated that the trial judge here made an error by not responding to the jury's questions. But in fact, the judge said these instructions are applicable to both defendants, didn't separate them, didn't point the finger at one over the other, didn't in any manner or shape or form try to show which one was applicable or not. He said it's applicable to both defendants. Then it was up to the jury to decide which ones based on the evidence. If the court had said the last part of that, which is what the defense counsel asked for, to instruct the jury just for you to decide whether or not one of these two men is an initial aggressor, then I think there wouldn't have been an error. That is what defense counsel asked for. But he didn't do that. Instead, what happened is because there's multiple defendants, the court's trying to come up with a pack of instructions to deal with the multiple defendants with slightly different charges. The court puts out instructions that are Holman, then Williams, Holman, then Williams. And when this answer says it applies to defendants, after the jury had wondered who does this apply to, seemingly asking which defendant, they continued that pattern, Holman, then Williams. So I think that's one explanation as to why, even though the evidence was insufficient to convict here, under the familiar reasonable doubt standard, the jury ended up convicting. Now, I do think the evidence is insufficient, at the very least, closely balanced here because of the other things that occurred on my client's journey to go help. He doesn't just see Owens with a stab wound in the back. He then sees Vernon Holman, who had been stabbed by Mr. Beam while trying to stop Beam's stabbing spree with blood gushing from his neck. Defense Exhibit 10 actually shows that happens. They're both out there on the platform. Now, Mr. Beam is also out on the platform. People are shouting, he's the one stabbing people. That doesn't come into my client's testimony because the state objects, but it comes into Mr. Beam's. Others are screaming, people are running around. Mr. Beam hasn't put that knife away. He is waving it at everybody on that platform. Beam doesn't run to the exit. He doesn't run to that CTA officer that's attending to Mr. Holman. Instead, Beam runs back into this crowded stop train at 2 a.m. on the red line. All right. Sorry to interrupt you again, but is there any indication that the jury was not, in fact, unanimous in convicting the defendant? I mean, is there anything you could point to that you would say, oh, well, the jury wasn't, in fact, unanimous in its decision? We don't know, Your Honor. And the guidance here is that Jackson case from 2022. An analogy is what we do these days, the 431B error. We don't look for whether there's actual bias to determine if 431B error is reversible in a closely balanced case. Instead, we look, is there error? And Jackson says, and the state concedes here, that this particular kind of error of pulling only 11 of 12 jurors is clear error for plain error purposes. Then I'll admit it's not second prong error after Jackson. We look to whether it's a closely balanced case. And all those hallmarks of a closely balanced case are present here. In addition to what the video evidence shows, which I think strongly supports my client's case. Of course, we have a jury that's out for a relatively long time for an aggravated battery. We have a jury that's engaged in asking questions. On top of that, the state's theory ends up sort of falling into this exception within an exception circumstance. Normally, on, say, this initial aggressor question, normally this court would say, well, the person who is brandishing a knife and stabbing multiple people before somebody gets involved is obviously the initial aggressor. And I think, yes, Your Honor. Isn't it reasonable to conclude that the jury applied the provocation instruction to the defendant because, in fact, it determined that the defendant was the initial aggressor as between himself and Beam? Your Honor, I don't think that is a reasonable conclusion. Even if we have that conclusion, it doesn't matter because we have a mistaken answer from the court that didn't tell juries, that didn't tell the jurors to make that determination. Now, if they had made a determination that my client's the initial aggressor, that is an abjectly incorrect determination for several reasons in the brief. From the moment that Mr. Beam stabs Holman, he never puts that knife away. My client sees him. Mr. Beam has that knife. He's waving it at passengers in Defense Exhibit 10 on the platform. He rushes back into the train, not toward the exit, not toward a CTA employee. He rushes back into the train with multiple passengers, brandishing that knife, waving it to different passengers on the train. And ultimately, even if we think that my client, by walking alongside that train, carrying the bottle he happened to be drinking from that night, was somehow an aggressor, it no longer matters in the end. When Mr. Beam, as shown on page 23 of the brief, Defense Exhibit 9, is rushing toward my client's chest, ready to plow that knife into my client's chest to make him the third stabbing victim that night as my client swings the bottle. Now, Your Honor, I think an informative notion here is there's this notion that if you somehow enter the peril, you're transformed into an aggressor. When you look, there's a pretty clear thread in case law that says, well, when one's entering the peril out of a reasonable belief that he's doing so to help others, that initial aggressor logic falls to the side as a matter of public policy. So we cite that John Williams case from 1965. It's the cab driver that comes across a gang beating, intervenes, they throw a brick at him, and he ends up shooting one of the gang members. That opinion, I think, is worth a read because it makes this clear holding as to what happens when somebody comes across assault. We're not going to punish them for intervening because otherwise, because as a matter of public policy, the law wants to encourage people not to just be bystanders, not to just hope that somebody else will step in. And Mr. Williams and Mr. Holman are the ones that stepped in when they saw stabbing victims on the train, and they took knives to the back and the neck for it. And I think it is fundamentally unjust that they're the ones that are sitting convicted in this case. And then one more final point on this notion of an initial aggressor, and mind you, I suppose, too, is there's a question, of course, of who instigated any aggression in this case. Well, we know it's all on video. The first aggression is by the young man in the black t-shirt that tried to take Beams' phone. The next act of aggression is Mr. Beams when he stabs the fleeing Martinez Owens in the back. The next act of aggression is Mr. Beams again when he's waving that knife at passengers on the platform and then on the train. And then the next act of aggression is Mr. Beams as he's rushing that knife toward my client's chest in an attempt to escape, not because he's being assaulted, but because people are trying to subdue him in some kind of panicked stabbing spree. Given what those facts are, I don't think a jury could reasonably find that my client was the initial aggressor. And, of course, any distortion in the instruction to do so, any failure to tell them that they had to do that, given the closeness of the evidence, would require a new trial in this case. And at the very least, when that knife is coming toward my client, the statute asks, even if you're the initial aggressor, do you have a reasonable means to escape? And what would have been reasonable for my client to do when that knife is coming toward him? If he had turned around, he'd been in the exact same situation as Martinez Owens, who had taken a knife to the back. And I don't think it is reasonable to demand that somebody stop trying to help intervene on a stabbing spree and instead take a knife to the back. Now, Your Honors, I do want to briefly comment on a few other points in the case. One is, what happens after? This court has seen lots of self-defense cases where the defendant then flees and that is treated as evidence of his guilty knowledge he didn't really act in self-defense. What does my client do? He waits for the police. When the police finally arrive, and they took a long time to arrive, when they finally arrive, he goes and he tries to tell a story to nearly every officer there. The brief cites, I think, two or three different officers plus my client's testimony as him trying to get his account out there. That is the opposite of somebody who didn't believe that he acted in self-defense. It shows that he did believe he acted in self-defense and that belief was reasonable. And other moments show what my client's belief was and why it was reasonable. Toward the ends of the thing, after Beam runs back onto the train, after the incident with the bottle, after there's been another knife-knife conflict with Holman, my client, even though Beam is pinned, my client doesn't attack him at that point. In fact, he tries to pull Holman away from attacking him and Beam knifes his arm in the process, making my client the third person that Daniel Beam sent to the hospital with a knife wound. These are the opposite of somebody who's acting to try to create harm. This is the acts of somebody that is trying to stop harm. And yes, even the down-on-his-luck guy that's sitting on the back of the red line train at 2 a.m. has the right to help others and the right ultimately to defend himself when the knife is coming toward his chest. For those reasons, Your Honors, I'd ask that you reverse my client's conviction outright. At the very least, I'd ask that you order a new trial on issues 2 and 3. Thank you, Counselor. Justice Reyes, any other questions? No, not all questions. Okay. All right. State? May it please the Court. Your Honors, the CTA surveillance video does not depict any of the things that Counsel has just stated to this Court. The CTA surveillance video shows that Daniel Beam is retreating. In every single shot, he is retreating as the defendant is pursuing him with his empty liquor bottle being held in his hand ready as a bludgeon. Every single frame shows, first, it's two-on-one. It's Williams together with Holman pursuing Daniel Beam along the platform. At this point, Holman has a knife in his hand. And then Latoya Thomas joins them as three against one. And for that reason only, does Daniel Beam jump back on the train? He's clearly looking past them. He knows where the steps are to get himself up to ground level, and he can't get past them. The CTA worker that you see in the video is standing there, obviously has no weapon on him, and is just staying out of it. Daniel Beam is running from these, from both defendant, Holman, and Thomas. And the shot on the inside of the train shows him looking. He's got Thomas and Holman, who has a knife, coming at him. He's boxed in on the train. And what does defendant do? He stands in the only place that Daniel Beam can exit. He doesn't retreat. He doesn't run away or say, you know, I'm out of this fight. I'm not going to get involved. Clearly, he's not stabbing anyone. There are no others around. He's not stabbing Holman. He's not stabbing Thomas. There is no one on the platform being attacked by Daniel Beam. What about, excuse me, counsel, what about the issue that your opponent raises, that Beam is actually charging at him with the knife, all right? So doesn't that make him the aggressor here? And is it not self-defense at that time for the defendant to say, you know, he's coming at me with the knife? No, Your Honor. He could have stepped to the side. It's true that Daniel Beam had his knife out. He has his knife out throughout every shot, after he's been attacked the first time and the second time by Holman, not knowing why folks on the train are attacking him. He is clearly in a self-defense posture. Context is everything. Watching these videos from beginning to end, you can see the fear in Daniel Beam. You can see how he's holding the knife. In the video, you see him look at Holman and Thomas, look at where defendant is with his bottle, and he makes a choice to run for it. He doesn't turn and attack Holman and Thomas. He wants out. He wants to get away. And again, they chase him. Again, the three of them are chasing him on the platform, which forces him to return back to the train. He can't get past them to get to the stairs that go up to the ground level. You see the train rocking as he's trying to get away from them. There is no video evidence showing that defendant tries to pull Holman off of Daniel Beam. That's not in the video. He's trying to get away from three attackers by climbing out of the train car. We've all been on the CTA. We know how this looks. And climbing over the third rail and then running off. He somehow finds a way to get out where the workers are there. And this leads me directly to the first issue of sufficiency of the evidence. Daniel Beam's testimony was corroborated by the CTA surveillance video. And it absolutely disproved self-defense and defense of others. There are no others on the platform. There are no others on the train being attacked. The people who are causing a chaotic scene are the folks that were with Owen. And maybe they were wanting revenge or retaliation. Maybe they didn't ask their friend, did you just rob that guy? Is that why he stabbed you? I don't know. But that's the folks that are creating the chaos. Everyone else you see in the video is having a snack or sleeping. There's no chaos on this train with a stabber on the loose. Defendant takes it upon himself to pursue a retreating Daniel Beam. So the evidence. If I could just interrupt you a second. So in determining who's the initial aggressor, do we look at the immediate time of the battery or do we look at the entire situation? Your Honor, I think both. The case that counsel asked for additional authority, he didn't talk about today, but that Wiley case is interesting. How it talks about viewing an incident like this from beginning to end. And how the different altercations, most of the cases defendant relies on. There is. There is. There are. It's one incident with the same players. And, and it somehow increases the, you know, the volatility of it. That that in this case is it's very interesting case, which is why I guess we're before this court. There are these three distinct altercations with three aggressors. And so looking at the whole. The entire incident is important for context to see that Daniel beam. Isn't it? Isn't a mode of self-defense, but looking at that moment where counsel wants you to look where Daniel beam is somehow charging and trying to stab the defendant. And if he turned around, he'd be stabbed in the back is ridiculous. He could step to the side and let the man run. He could step to the side and let the man run.   He's been running the last five minutes in the video. So in that moment, Defendant is not, is not defending himself and he's not, certainly not defending others. He is the initial aggressor. Which takes me to the next issue, which is the jury instructions. When you say he's the initial aggressor, you are looking. Beyond the. Immediate incident. Where he's. Got a knife towards the defendant. Yes. Defendants conduct before that made the defendant, the initial aggressor. Yes, your honor. Maybe in the very first moments of defendant hearing, there was a stabber on the train and seeing that there was someone wounded. There was no video of blood squirting out of anybody's neck. They have a paper towel on Owen's back. He never sees home. And that when he first started to pursue him, maybe in his mind, He's thinking there's a bad guy here loose on the train. That could be possible. But the moment he encounters being beam is running away and he is pursuing beam. And in that moment, it is no longer defensive others or self-defense. He is pursuing as being as retreating. There is no eminent. There is no eminent. Use of force coming from being toward defendant or toward anyone else on the train. And the jury instructions were properly given to the jury. The initial aggressor instruction is, was supported obviously by Daniel beams testimony and as well as the, the CTA surveillance video. And that was for the jury to decide whether these affirmative defenses applied, or he was the initial aggressor. The, the instruction itself was correct. The argument that somehow initial aggressor doesn't apply to defense of others. Is, is absolutely false. This court has said repeatedly that when a person is defending another, he steps into the shoes of that other. And in order to know what force is justified, the, the, the person who was defending others has to know whether that person was acting as the initial aggressor. So these instructions always go together. It was absolutely proper that the jury consider the initial aggressor instruction together with self-defense and defensive others. And if there was a mistake, if that was somehow an error, which, which the people say it is not, was not it would be harmless because without the initial instructor, initial aggressor instruction, this jury could still find that the people disprove self-defense and defensive others. So that would not be an issue at all. And also I should mention that the the defense forfeited that issue. So that would have to be reviewed under plain air. And there was no error there. I want to turn to the court's response to the jury question. The, the, the trial court's response was specific and accurate. The trial court turned the jury's attention to the fact that these, this instruction applied to the defendants, plural and said, contrary to what council just said to you, alleged conduct and as to whether the state has proven their allegations against the defendants, that is a correct statement of law and justified use of force is within both of the element instructions as well. The third proposition in each element instruction talks about justified use of force. Council makes a big deal in his brief of the fact that they had written Williams on top of the initial aggressor instruction. They'd written Holman on top of the self-defense defensive others, instruction, lots of speculation about what the jury was doing. This court has said, you should not divine to interpret what a jury is, is thinking and doing with their questions. However, it's just as possible that they were thinking that's the way they were going. Holman had a justified use of force and Williams was the initial aggressor, which is exactly how their verdicts came out. This was. As council indicates, doesn't that suggest that maybe there was some confusion there at that point in time. And that's why they sent the note to the judge to get some clarification. I disagree with that. Your honor. I feel that the, the trial court was very specific. Well, before the trial court even instructed them, the closing arguments were very clear that both councils for Williams and Holman argued that Daniel beam was the aggressor. They didn't argue defensive others. They argued self-defense and that Daniel being was the aggressor. And then the people argued that defendant was the initial aggressor. So this was very, this was, this was very clear in the, if you read the closing arguments and then when the trial court instructed this jury, they, the court made it very clear that they were to apply the evidence separately to these defendants. The instructions were not in some sort of pattern. I don't, I don't know what that is about. There was the elements for aggravated battery were different for these two defendants. So they put, they, they agreed to put Holman's name on a set and defendants name on the set and all the other instructions applied to both defendants. That's how the trial court explained it to the jury. And that's how the jury instructions looked to the jury. So I don't, I don't see where there's an argument here that the jury was confused at all. What about the comment that the defense council points to from one of the jurors indicating that there was some confusion? Well, that's wholly inappropriate. And he went through that for his, his reply brief. I, I don't think the court should consider it. I know it's the, the court has made clear that that's inappropriate to consider. There's, there's no basis for that. There was nothing brought to the court about that. And that goes along with this idea that, that defendant deserves a new trial based on a 12th juror, not being, not being pulled. That error was made by the defense council. Should have brought that to the trial court's attention and he would have immediately corrected it. There was nothing that came out in the jury polling where one of the jurors said, I, I'm, I'm not, I'm undecided. I'm not sure. There was nothing that came out at the, at the conclusion of the trial that would make the court think there was any problem. It was a simple, a simple oversight. And that error under the first prong does not even come. We don't come close to closely balanced. There was no credibility contest here. We have Daniel beams testimony corroborated by CTA video. Every moment of that video corroborates what he testified on the stand too. And defendant's testimony is all over the place and not corroborated by the, by the video. So there was no credibility contest here. That error is, is a, is a harmless error. The court has any more questions. I'll conclude. No more questions. Your honors. The evidence at trial completely disproved defendants, self-defense and defense of others claims. LeRone Williams was the initial aggressor. The people asked this court for the reasons stated today and those in our brief to affirm defense conviction for aggravated battery. Thank you very much. Thank you. Response. Jonathan. Yes, I have one legal point and three factual ones. My one legal point is that it is my clients beliefs that matter under the statute. It is the defendant LeRone Williams beliefs that matter and his reasonable belief in the need to defend others based on what he knew, not whether one sympathizes for Daniel being not whether Daniel being needed to defend himself, even if Daniel beam somehow thought he was defending himself and he stabbed owners in the back, stabbed home in the neck, took that knife and tried to rush it through my client's chest. It doesn't matter in terms of my client's case. What matters is my client's beliefs and everything my client knew led up to the belief that Dan believed that Daniel beam was a threat that, and that in order to defend all of those many people shown on the video around there, he, he should act. And eventually he needed to act to save himself and that knife came toward his  Now I want to correct the three falsehoods in the state's presentation. The state seems to suggest that my client was friends with some of these other co-defendants and maybe that was it's charging theory once upon a time. I don't know. There's a reason the court directed out the state's strained attempt to trial against some kind of accountability instruction. It's because my client had never met any of these people before. The only possible insinuation that they're somehow friends because they came to the same conclusion that Vernon Holman and, and my client did that Daniel beam was a threat to all those people on that red line train at two in the morning and that he needed to be subdued. Instead, Daniel beam was still running around, waving that knife at all those passengers. Please look at states at defense exhibit nine, 10 defense exhibit five, all of those look at how people would have perceived Daniel beams actions. The second false that I need to correct is the state asserts. My client never saw Holman bleeding. The defense exhibit 10, which shows the platform is they're both out there on the platform at the same time beams waving that knife around. Holman has his hand up here. He's clearly injured. And my client is looking directly at him. Just as the other defense exhibit shows my client looking directly at Martinez Owens as he's getting his stab wound tended to. And then finally, I want to point out one last fact. It comes in late. The state claims that it's not on video that my client is pulling Holman back. My client testifies to it. It is on video, but the video is partly obstructed. It's toward the end. Holman is there trying to restrain me. My client is standing back to make sure nothing else happens. There was an open train door that is partly blocking that CTA video camera, but you can see that this is the position of the individuals and that corroborates the story. When he gets that cut across his arm that requires stitches again, inflicted by Daniel B. Your honors, whatever the metric is, whether it's closely balanced harmless air for the court, not trying to clarify the jury question, we think it's sufficiency of the evidence. I'd ask that this court find that my client had at least a compelling case that he was acting to defend others and ultimately himself and therefore reverse this conviction. Thank you. Thank you. Thank you. We will take this case under advisement after some excellent arguments and a decision will be issued in a reasonable time. So thank you both.